368 A.2d 1299
COMMONWEALTH of Pennsylvania
v.
Charles CAMPBELL, Appellant.

Superior Court of Pennsylvania.
Submitted June 16, 1975.
Decided Dec. 15, 1976.

506

John W. Packel, Asst. Defender, and Vincent J. Ziccardi, Defender, Philadelphia, for appellant.

Steven H. Goldblatt, Asst. Dist. Atty., and F. Emmett Fitzpatrick, Dist. Atty., Philadelphia, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

WATKINS, President Judge:

This is an appeal from the judgment of sentence in the Court of Common Pleas of Philadelphia County, Crimin-

al Division, by the defendant-appellant, Charles Campbell, after conviction by a jury of terroristic threats and rape; and from the denial of post-trial motions.

During the trial the prosecutrix testified that she met the defendant on the street on March 14, 1974, and proceeded to a party with him in a private residence. After the party the prosecutrix, another woman, the owner of the residence at which the party was held (a male individual known as "Tiny"), Tiny's male cousin, and the defendant entered an automobile operated by Tiny's cousin. The prosecutrix testified that she entered the vehicle because she thought she was going to be transported to her home. Contrary to her wishes, the male occupants of the vehicle purchased some beer and proceeded to a park where the occupants of the vehicle talked and drank beer. After the prosecutrix made known her wish to return home, the vehicle was driven from the park and the other female taken home. In so doing the driver of the vehicle passed the home of the prosecutrix. Sensing that she might be in danger the prosecutrix attempted to jump from the vehicle but was prevented from doing so by the male occupants of the car. The car then proceeded to a taxi cab lot where the defendant informed the prosecutrix that he desired to have sexual relations with her. The defendant then placed a dog chain around her left hand and dragged her from the vehicle. The other occupants of the vehicle were directed by the defendant to drive away and to return to the place later. After the vehicle departed the defendant produced a knife and threatened to kill the prosecutrix if she failed to co-operate with him. He then pushed her to the ground and forced her to have intercourse with him. Later the vehicle returned and the prosecutrix was taken home.

The defendant's trial began on July 15, 1974. On July 22, 1974, he was convicted by a jury of rape and terroristic threats. He now contests the conviction on two grounds, claiming that the trial judge erred in ruling

that the Commonwealth could impeach any testimony given by the defendant, if he took the stand, by introducing a prior conviction for aggravated robbery and in permitting a medical records librarian from Philadelphia General Hospital to testifiy as to a finding of spermatozoa in the prosecutrix' vagina after the incident. The defendant presented a defense through various acquaintances of defendant who testified to the prosecutrix' bad reputation and also presented "Tiny" who testified that the prosecutrix voluntarily left the vehicle at the scene of the alleged crime. The defendant did not testify himself.

The general rule is that the Commonwealth may introduce into the record evidence of prior convictions to attack the credibility of a defendant who testifies in his own behalf. *Commonwealth v. Butler,* 405 Pa. 36, 173 A.2d 468 (1961), cert. denied, 368 U.S. 945, 82 S.Ct. 384, 7 L.Ed.2d 341 (1961). However, in the case of *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973), the Supreme Court held that this rule is not absolute and that under the proper circumstances a trial court could refuse to allow the Commonwealth to impeach a defendant's testimony by introducing the record of his prior convictions. In that case the Court states that:

"Where the defendant has no other means by which to defend himself, it would be particularly unjust to subject him to the introduction of prior convictions . . . ."

Pursuant to this reasoning the Court held that a trial court had discretion as to whether or not to allow the Commonwealth to impeach a defendant's testimony by use of prior convictions. The salient factors to be considered in exercising this discretion are the criminal record, his age and circumstances, and the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction. *Commonwealth v. Bighum,* supra.

In the instant case the prior crime which would have been introduced into the record against the defendant if he had testified was a 1971 conviction for aggravated robbery. Since the defendant's conviction had occurred just 3 years prior to his trial, aggravated robbery is a crime involving serious moral turpitude, and the defendant was able to call other witnesses to all occurrences right up until the time of the rape we hold that the trial court did not abuse its discretion in ruling that the record of the crime could be introduced to impeach the defendant's testimony if he had elected to take the stand. Had the defendant taken the stand and contradicted the prosecutrix' testimony the sole issue would have been one of credibility and the crime of aggravated robbery certainly indicates a propensity for dishonesty on the defendant's part. As such it would be highly relevant in determining the truth of what the defendant had to say. Therefore, we feel that the court below properly exercised its discretion in this matter. See *Commonwealth v. Butler*, supra.

The defendant's second contention is equally devoid of merit. At trial the Commonwealth called to the stand the librarian of the medical records department of Philadelphia General Hospital where the prosecutrix was taken after the incident. The librarian testified, over the defendant's objection, that the medical records indicated that spermatozoa was present in the prosecutrix' vagina at the time of the examination. In *Commonwealth v. McCloud*, 457 Pa. 310, 322 A.2d 653 (1974), it was held that medical records could be admitted to show certain facts under the *Uniform Business Records as Evidence Act*, Act of May 4, 1939, P.L. 42, No. 35, § 2, 28 P.S. § 91b but that conclusions could not be admitted thereunder. See also, *Commonwealth v. DiGiacomo*, 463 Pa. 449, 345 A.2d 605 (1975). The question then becomes one of whether the finding of spermatozoa in the prosecutrix' vagina is to be treated as a fact or as a medical conclusion.

Admittedly it is often difficult to distinguish between a fact and a conclusion. Ultimately, every fact can be considered a conclusion. For example it may be a fact that one's name is John Doe. However, an argument could be made that this is a conclusion because one's name is only what it is because of the law relating to names given at birth and because one has never had his name legally changed. Therefore the fact that one's name is John Doe can logically be termed a legal conclusion if one wishes to extend the argument to that degree. Thus the difficulty of distinguishing facts from conclusions becomes apparent. Be that as it may courts have attempted through the years to distinguish facts from conclusions in the interest of expediency. When a circumstance becomes very routine or basic it is designated as a fact. Sometimes these designations appear arbitrary but it is necessary to make them nevertheless or a court case could never be completed.

Turning to the situation at hand we feel that the court below correctly analyzed the finding of spermatozoa in the prosecutrix' vagina as one of fact. Tests to determine the presence of sperm are basic and routine and leave little room for error. Either there was spermatozoa present in her vagina or there was not. The medical records of the hospital indicated the presence of the substance. The defendant's counsel had been in contact with the doctor who had examined the prosecutrix and had not attempted to have him testify otherwise. Under these circumstances we hold that the court below properly admitted the medical records of the hospital. See, *Commonwealth v. Mobley*, 450 Pa. 431, 301 A.2d 622 (1973).

Judgment of sentence is affirmed.

HOFFMAN, J., files a dissenting opinion.
SPAETH, J., files a dissenting opinion.

HOFFMAN, Judge, dissenting:

While I join in Part I of the Dissenting Opinion by Judge SPAETH, I do not share his view expressed in Part II. I do not believe that we should abandon the well-established rule enunciated in the Majority Opinion in *Commonwealth v. DiGiacomo,* 463 Pa. 449, 345 A.2d 605 (1975), that facts contained within medical records are admissible but opinions are not. Because the lower court erred in admitting the hospital records of the victim, I would reverse the judgment of sentence and award a new trial. See, also, *Commonwealth v. McCloud,* 457 Pa. 310, 322 A.2d 653 (1973).

SPAETH, Judge, dissenting:

During appellant's trial for rape the medical records librarian of the Philadelphia General Hospital was permitted over appellant's objection to testify that the hospital records showed that an examination of the prosecutrix had disclosed an abrasion on the left hand, no evidence of trauma to the neck, head, or extremities, and spermatozoa in the vagina. Appellant's objection was that the testimony was hearsay. In denying the objection, the lower court and the majority of this court say that the testimony was nevertheless admissible under the business records exception to the hearsay rule.

I

In deciding whether an entry in a hospital record is admissible under the business records exception, a distinction must be drawn between an entry that records a fact and an entry that records an opinion. As the law now stands in Pennsylvania, an entry of fact is admissible, but an entry of opinion, at least in a criminal case, is not. Thus in *Commonwealth v. Mobley,* 450 Pa. 431, 301 A.2d 622 (1973), entries in records offered to show that on certain dates the defendant had been admitted to the hospital and had been treated were held admissible as entries of fact. The Supreme Court noted that although

the records included entries of medical opinion, "[t]he records were offered not to show medical opinion, but for the legitimate purpose of establishing the fact of hospitalization and the treatment given." *Id.* at 436, 301 A.2d at 624. Similarly, in *Platt v. John Hancock Mut. Life Ins. Co.*, 261 Pa. 652, 66 A.2d 266 (1949), hospital records were held admissible to show that the plaintiff's decedent had been admitted to the hospital and had expectorated about a cupful of blood. In contrast, in *Commonwealth v. McCloud*, 457 Pa. 310, 322 A.2d 653 (1973), it was held that the trial court should not have admitted an entry of the medical examiner's opinion regarding the cause of death.

In *McCloud* the Supreme Court relied on constitutional grounds. Since the charge was murder, causation as an element of the crime had to be proved beyond a reasonable doubt. To admit the entry of the medical examiner's opinion regarding causation would, the Court said, deny the defendant his right of confrontation. Other cases, however, which do not involve the right of confrontation because the proponent of the evidence was not the Commonwealth but the defendant, hold that an entry of opinion is inadmissible because it is not a "record of an act, condition, or event" within the Uniform Business Records as Evidence Act, Act of May 4, 1939, P.L. 42, No. 35, § 2, 28 P.S. § 91b. Thus in *Commonwealth v. DiGiacomo*, 463 Pa. 449, 345 A.2d 605 (1975), hospital records offered by the defendant to show that a certain witness had been injured were admitted by the trial court "to prove the fact of hospitalization and the duration of hospital stay, but not to show diagnosis or medical opinion." *Id.* at 455, 345 A.2d at 608. Affirming, the Supreme Court held that "[t]he law is clear that hospital records are admissible to show the fact of hospitalization, treatment prescribed, and symptoms given . . . [citations]. Medical opinion contained in the records and proffered as expert testimony is not admissible

however where the doctor is not available for cross-examination . . . [citation]." *Id.*

It is evident that the distinction between an entry of fact and an entry of opinion will not always be easy to draw. Moreover, there are opinions and opinions. Thus, encouraged by the commentators, a number of courts have adopted a middle ground, holding that even though the entry is of opinion, it will be admitted if the opinion is one upon which competent physicians would not be likely to differ. That is what Mr. Justice Roberts and Mr. Justice Pomeroy would hold, as they say in their respective concurring opinions in *Commonwealth v. DiGiacomo, supra*; as the opinion by Mr. Justice Roberts collects the authorities, there is no need to cite them here.[1] The fact remains that the view of Mr. Justice Roberts and Mr. Justice Pomeroy is a minority view.[2]

The hospital records offered in the present case included both entries of fact and of opinion. The entries that there was an abrasion to the left hand and no evidence of trauma to the neck, head, or extremities are entries of fact; they are indistinguishable, for example, from the entry in *Platt v. John Hancock Mut. Life Ins. Co., supra*, that the plaintiff's decedent had expectorated a cup of blood. The entry that there were spermatozoa in the vagina is an entry of opinion; it reports a conclusion that

1. We have come close to holding the same in a civil case. Thus in *Myers v. Genis*, 235 Pa.Super. 531, 344 A.2d 691 (1975), we affirmed the admission of a doctor's letters, even though the letters contained a diagnosis, where we considered that under the unusual facts of the case, equitable considerations required such a result. Whether the letters were admissible as within the Uniform Business Records as Evidence Act was not, however, decided. *Id.* at 533 n. 3, 344 A.2d at 693 n. 3.

2. For my part, I think the law should be as stated by Mr. Justice Roberts and Mr. Justice Pomeroy. Here, that would mean that the entry that there were spermatozoa in the vagina (as well as the entries of fact) would be regarded as within the business records exception; although the entry is an entry of opinion, the opinion is a routine sort of opinion, requiring some but not a great deal of skill, and therefore not one about which competent physicians are likely to differ.

the untrained layman would not be competent to make; one may assume that the person who made the entry was a laboratory technician who made a vaginal smear, and after tranferring the smear to a slide, examined it under a microscope. Accordingly, under the majority opinion in *Commonwealth v. DiGiacomo, supra,* this entry should not have been admitted, and a new trial should be granted.[3]

The majority reasons that admission was nevertheless proper because "defendant's counsel had been in contact with the doctor who had examined the prosecutrix and had not attempted to have him testify . . . ." These facts are in my view quite immaterial. Inadmissible hearsay does not become admissible because the party objecting to the hearsay could call the declarant. The burden of proving penetration was on the Commonwealth, and had to be met by offering competent evidence. What the majority has said is that if a defendant correctly objects that the Commonwealth has offered evidence incompetent because the Commonwealth has not called the declarant, the objection will nevertheless be denied upon a showing that the defendant could have called the declarant. No authority is cited for this proposition, and I do not know of any.

## II

There is a second difficulty with the majority opinion. Suppose that the majority is correct, that the entries, both of fact and opinion, are within the business records exception to the hearsay rule. That does not end the case. It remains necessary to decide whether appellant is correct in his contention that to admit the entries represented a denial of his right of confrontation. The majority opinion does not consider this contention.

3. It cannot be maintained that the error was harmless beyond a reasonable doubt; the evidence if accepted was proof positive of penetration.

There is a split of authority. In *State v. Tims*, 9 Ohio St.2d 136, 224 N.E.2d 348 (1967), the Supreme Court of Ohio held that "[i]nasmuch as an accused has the constitutional right to confront the witness used against him the Business Records as Evidence Act is not applicable to criminal proceedings to allow the admission into evidence of hospital records showing the results of a physical examination of an alleged rape victim." In reaching this conclusion, the court relied on *People v. Lewis*, 294 Mich. 684, 293 N.W. 907 (1940). Recently, however, in *People v. Kirtdoll*, 391 Mich. 370, 217 N.W.2d 37 (1974), the Supreme Court of Michigan, after a most careful collection and discussion of the authorities, overruled *Lewis*. (This is of particular interest because, as in the present case, one of the challenged entries was that spermatozoa had been found.)

As the court in *Kirtdoll* points out, the right of confrontation is not absolute. Thus the admission of a dying declaration or former reported testimony has been held not to violate the right. For my part, I agree with the court's conclusion that these exceptions to the hearsay rule are indistinguishable, so far as the right of confrontation is concerned, from the business records exception. Accordingly, I would hold that it does not violate the right of confrontation to admit an entry within the business records exception—at least, not when the entry is one of fact or of an opinion upon which competent physicians would not be likely to differ.

It is arguable that our Supreme Court has in *Commonwealth v. McCloud, supra,* adopted the view expressed in *State v. Tims, supra.* It is not clear, however, that this is so, and I do not think it is. Rather, *it seems to me that McCloud* is to be confined to its special facts, which involved an opinion, of a sort likely to be controversial, going to an element of the crime charged, and offered despite the availability of the defendant. My guess is that if our Supreme Court overrules, or distinguishes away,

*Commonwealth v. DiGiacomo, supra,* and holds that an entry of opinion *is* admissible under the business records exception, it will go on to adopt the view expressed by the Supreme Court of Michigan in *People v. Kirtdoll, supra.* Here, that would mean that the hospital records were properly admitted.

In the meantime, however, we are bound by *DiGiacomo.*[4] I would therefore vacate the judgment of sentence and award a new trial.

---

4. Appellant has also argued that the trial judge should have precluded the Commonwealth from impeaching him by proof of a prior felony. *See Commonwealth v. Bighum,* 452 Pa. 554, 307 A. 2d 255 (1973). In view of *DiGiacomo,* I have not found it necessary to consider this argument.