(587 P 2d 3)

No. 49,675

State of Kansas, *Appellee*, v. Donald E. Davis, *Appellant.*

Petition for review denied February 28, 1979.

Opinion filed December 1, 1978.

*James S. Phillips, Jr.,* of Phillips & Phillips, Chartered, of Wichita, for appellant.

*Marvin R. Cook,* Assistant District Attorney, *Vern Miller,* District Attorney, and *Curt T. Schneider,* Attorney General, for appellee.

Before Foth, C.J., Abbott and Rees, JJ.

Rees, J.: This is an appeal from a jury conviction of aggravated battery (K.S.A. 21-3414). The charge arose out of a stabbing during an argument over payment to the band following a dance at a private party. Defendant was a member of the band. He did not testify.

Defendant contends the trial court erred in refusing to admit proffered evidence consisting solely of selected portions of a hospital record reciting nothing other than reported statements made by defendant to hospital personnel. The entire hospital record was marked as an exhibit but not proffered. The State objected to admission of the proffered evidence on the ground it was hearsay. We hold the trial court did not err.

The common law hearsay rule and its exceptions, as judicially and legislatively modified in Kansas, are codified. K.S.A. 60-459 *et seq.* Defendant's sole contention to the trial court was that the proffered evidence was admissible under K.S.A. 60-460(*m*), the business records exception to the hearsay rule. No other basis for its admissibility having been presented to the trial court, admis-

sibility under any other exception to the rule cannot be argued on appeal. *State v. Darling,* 208 Kan. 469, 475, 493 P.2d 216 (1972). The issue of admissibility of the proffered evidence under K.S.A. 60-460(*l*), the statutorily expressed exception to the hearsay rule for statements of physical or mental condition of the declarant, is not before us and we express no opinion as to its applicability to the proffered evidence.

Assuming appropriate foundation for admission of all or part of the hospital record in this case, the problem is that double hearsay is involved. The proffered evidence constitutes hearsay statements of hospital personnel reporting statements of the defendant. It was offered to prove the truth of such included statements. The business records exception, K.S.A. 60-460(*m*), renders admissible hearsay statements of hospital personnel but does not render admissible included hearsay statements absent admissibility of the included statements under some other exception to the rule. K.S.A. 60-463.

"The mere fact that recordation of third party statements is routine, as in official reports or hospital records, is no guaranty of the truth of the statements themselves. In this situation there are two hearsay barriers. The exception for business entries removes one of the barriers, and the removal of the other must depend on whether there is an independent basis for admissibility of the included hearsay declarations under some other exception to the hearsay rule." 2 Jones on Evidence § 8.8 (6th ed. 1972), pp. 178-179.

In *State v. White,* 72 Wash. 2d 524, 530, 433 P.2d 682 (1967), a case involving the admissibility of a hospital record, it is said:

"Although the Uniform Business Records as Evidence Act allows regularly kept business records in evidence when proof that their custody, control and making shows prima facie that they are maintained in the regular course of business, the statute ipso facto does not render admissible such parts of the records as are otherwise excludable under well-established rules of evidence. If regularly maintained under a prearranged and established scheme, business records may be admitted to show the occurrence of events, conditions, conduct and status of things existing or occurring contemporaneously with the making of the records, but they are not admissible as a narrative of occurrences antedating the making of the notations. In short, although the Uniform Business Records as Evidence Act establishes a statutory exception to the common-law rule against hearsay evidence, it does not in all respects render admissible evidence contained in the record which should ordinarily be excluded."

Defendant's reliance upon *In re Estate of Bernatzki,* 204 Kan. 131, 134-135, 460 P.2d 527 (1969), is misplaced. *Bernatzki* held medical records admissible under K.S.A. 60-460(*m*). The state-

ments there at issue were of the entrants, hospital personnel, not a third party declarant. In this case, defendant is a third party declarant. Defendant's reliance upon *State v. Brierly,* 109 Ariz. 310, 509 P.2d 203 (1973) [blood type, see p. 318]; *Henson v. State,* 332 A.2d 773 (Del. 1975) [physician's clinical findings, see pp. 774, 775]; *State v. Finkley,* 6 Wash. App. 278, 492 P.2d 222 (1972) [physician's finding, see p. 280]; and *People v. Terrell,* 138 Cal. App. 2d 35, 291 P.2d 155 (1955) [physician's diagnostic conclusion, see pp. 56-57], is distinguishable. In none was there the issue of admissibility of double hearsay.

In *Ferrier v. State,* 5 Md. App. 553, 248 A.2d 501 (1968), the defendant was convicted of assault and battery. He argued on appeal that the trial court erred in admitting into evidence as a prosecution exhibit the hospital record concerning treatment of the victim's injuries. Part of defendant's argument was that the victim's statement of medical history was not "pathologically germane" to treatment and therefore not admissible. The Maryland Appellate Court held that as to the particular statement involved it saw no error in its admission and in the context of other trial evidence if there was error in admission of the hospital record it was not reversible error. 5 Md. App. at 557. As to the case before us, *Ferrier* is not in point because we do not have before us the question of applicability of K.S.A. 60-460(*l*).

*People v. Lewis,* 294 Mich. 684, 293 N.W. 907 (1940), held hospital records inadmissible in a criminal action. *People v. Herrera,* 12 Mich. App. 67, 162 N.W.2d 330 (1968), reversed on other grounds, 383 Mich. 49, 173 N.W.2d 202 (1970), limited *Lewis.* In *Herrera,* defendant's conviction of manslaughter of her husband was affirmed upon a finding of nonprejudicial error. The defense of temporary insanity was a trial issue. The defendant had been admitted to a hospital on a date four months prior to the killing of her husband. She offered as an exhibit the hospital record that concerned her hospital admission, her apparent physical condition and her consumption of an unknown amount of phenobarbital. It was found that under the Michigan business entries statute the trial court erred in its refusal to admit the exhibit but not as to the diagnosis made at the time of her admission. 12 Mich. App. at 76-77. Whether the hospital record included statements of defendant or any other third party declarant is not disclosed by the opinion. Accordingly, *Herrera* is of no assistance in our decision.

We hold the trial court refusal of defendant's proffered evidence was not because of misapplication of the business records exception.

Aggravated battery, in contrast to battery (K.S.A. 21-3412), includes an element of particular or specific intent, that is, the "intent to injure." *State v. Warbritton*, 211 Kan. 506, 508, 506 P.2d 1152 (1973). Under K.S.A. 21-3208(2), the fact of voluntary intoxication may be taken into consideration in determining such intent. Defendant claims error in the refusal of the trial court to instruct the jury as to the substance of K.S.A. 21-3208(2).

It is correctly argued on appeal that the trial court is duty bound to instruct on any defense supported by evidence which, viewed in the light most favorable to the defendant, would justify a jury finding in accordance with the defendant's theory. *State v. Seely*, 212 Kan. 195, 197, 510 P.2d 115 (1973). The question before us is whether there was sufficient evidence to require that the jury be given a voluntary intoxication instruction in this case.

The purpose of a voluntary intoxication instruction is to direct the jury that it may consider whether defendant's mind was so affected by alcohol or drugs that defendant was incapable of forming the requisite specific intent. See *State v. Boyd*, 216 Kan. 373, 379, 532 P.2d 1064 (1975). Where the giving of a voluntary intoxication instruction has been approved, there has been affirmative evidence that the defendant had no recollection of the occurrence or events out of which the charge arose. *State v. Seely*, 212 Kan. at 196-197. Our limited research has disclosed no Kansas case reversing for failure to give a voluntary intoxication instruction. Where the existence of a mental state incapable of forming a specific intent has been negated by evidence, the lack of the instruction has been held not erroneous. *State v. Kleber*, 2 Kan. App. 2d 115, 117, 575 P.2d 900, *rev. denied*, 224 Kan. _____ (May 5, 1978); *State v. Wright*, 221 Kan. 132, 139, 557 P.2d 1267 (1976); *State v. Gross*, 221 Kan. 98, 100, 558 P.2d 665 (1976).

What evidence was there of voluntary intoxication of defendant? There was none other than the testimony of his wife and the proffered evidence which we have found was not erroneously excluded. No attempt was made by defense counsel to elicit testimony of any other witness in the nature of affirmative evidence of defendant's intoxication.

In regard to Mrs. Davis' testimony, defendant contends she was prevented from testifying that defendant was drunk. This argument does not hold up. Although objections to various questions directed to her were sustained, the record discloses she testified that at the time of the argument defendant appeared to her to be drunk.

In summary, Mrs. Davis also testified that during the course of the evening, from 9:00 p.m. to midnight or 12:30 a.m., defendant "had about twenty beers"; "[e]*verybody was drinking. I was even drunk myself. Everybody was*" (emphasis supplied); defendant "was kind of staggering around" after the dance; and his eyes were red.

It is not contradicted that throughout the evening defendant's physical dexterity was such that he successfully played guitar in the band. He had such control of his faculties that he was an active participant in the post-dance argument over payment by check or in cash. He had sufficient presence of mind to obtain a shovel with which to defend himself when about to be accosted after the stabbing and then to abandon the shovel and depart the immediate scene of the confrontation.

Mrs. Davis not only described defendant as drunk, she also described herself and all others involved as having been in the same condition. Yet she and these same other persons who testified were each able to describe the events of the evening and at the time of the incident in considerable and specific detail.

The recollection and specific descriptions of Mrs. Davis and the other witnesses to the affray, as displayed by their trial testimony, must be considered in this case to be the yardstick by which defendant's mental condition was to be found. As such, their testimony negates defendant's claim of incapability to form an intent to injure. In the absence of any other evidence, Mrs. Davis' description of defendant as drunk, "kind of staggering" and red-eyed, was insufficient to afford a reasonable basis for a jury finding that defendant's mental state was such that he was incapable of forming the required specific intent. The trial court did not err in refusing the requested involuntary intoxication instruction.

Eight witnesses to the events of the evening testified. The victim, Becker, testified he was stabbed but he did not know by whom or with what. Talley testified he saw a knife with a three or

four-inch blade in defendant's hand and saw defendant then stab Becker in the abdomen with the knife. Chapman stated he did not see the stabbing, but afterward he saw defendant fold up a knife and put it in his pocket. The other five witnesses testified for the defense. They saw neither a knife nor a stabbing.

All the elements of aggravated battery were supported by the eyewitness testimony of Talley. It cannot be said there was insufficient evidence to support the verdict. The issue on appellate review is not whether the evidence shows guilt beyond a reasonable doubt, but whether the evidence is sufficient to form a basis for a reasonable inference of guilt when viewed in the light most favorable to the State. *State v. Berry,* 223 Kan. 566, 570, 575 P.2d 543 (1978).

Defendant's trial defense is difficult to discern. Its essence seems to have been that there was reasonable doubt preventing conviction because five of the eight witnesses saw no knife or stabbing. However, in his argument to the trial court concerning admissibility of the proffered evidence, defense counsel stated that an issue upon which he was relying was defendant's intoxication and lack of specific intent.

Failure of the trial court to instruct as to the lesser included offense of battery (K.S.A. 21-3412) is claimed reversible error. The duty to instruct on a lesser included offense arises only where clearly required by the evidence and where defendant might reasonably be convicted of the lesser offense if the instruction is given. K.S.A. 21-3107(3); *State v. Buckner,* 221 Kan. 117, 121, 558 P.2d 1102 (1976). We conclude that, as in *State v. Wright,* 221 Kan. at 136-138, there was no evidence on which defendant might reasonably have been convicted of the lesser offense of battery; there was no evidence reasonably negating an intent of defendant to injure; and there was no duty to instruct on the lesser offense. Defendant was charged with aggravated battery. He was either guilty or not guilty. The jury justifiably concluded he was guilty.

It is contended that the instruction on burden of proof and reasonable doubt was erroneous. The instruction given varied from defendant's requested instruction and PIK Crim. 52.02 only in that the phrasing of the last sentence is reversed. PIK Crim. 52.02 has been approved on appeal. There is no error if an instruction covers and includes the substance of a requested instruction. *State v. Taylor,* 212 Kan. 780, 784-785, 512 P.2d 449

(1973); *State v. Wilkins,* 215 Kan. 145, 153, 523 P.2d 728 (1974). It did not reasonably mislead the jury and is to be approved. *Klaus v. Goetz,* 211 Kan. 126, 130, 505 P.2d 726 (1973).

We hold refusal of defendant's motion for a new trial was not erroneous because we hold none of the claimed errors asserted in defendant's motion constituted error.

Defendant was not denied a fair trial. *State v. Floyd,* 210 Kan. 383, 502 P.2d 744 (1972), cited by defendant, is neither to the contrary as applied in this case nor in point.

Defendant's final arguments challenging the constitutionality of our habitual criminal statute (K.S.A. 21-4504) and its application in the sentencing of defendant have all been considered and decided adversely to defendant. *State v. Steward,* 219 Kan. 256, Syl. ¶ 15, 270, 547 P.2d 773 (1976); *Churchill v. State,* 216 Kan. 399, 532 P.2d 1070 (1975); *State v. Collins,* 214 Kan. 247, 248, 519 P.2d 1396 (1974); *Clinton v. State,* 210 Kan. 327, 328-329, 502 P.2d 852 (1972). See also *State v. Eaton,* 213 Kan. 86, 90, 515 P.2d 807 (1973).

Affirmed.

ABBOTT, J., Dissenting: I dissent from that portion of the opinion which holds that the hospital records were inadmissible and that it was not error for the trial court to refuse to instruct the jury on voluntary intoxication and the lesser offense of battery, as defined in K.S.A. 21-3412.

The rule is well-established in Kansas that "[a] criminal defendant is, of course, entitled to an instruction on his theory of defense if it is supported by any evidence whatever." *State v. Seely,* 212 Kan. 195, 510 P.2d 115 (1973). We also recognize that the evidence must be sufficient, when viewed in a light most favorable to the defendant, to justify a jury finding for the defendant on the issue instructed on. *State v. Hamrick,* 206 Kan. 543, 479 P.2d 854 (1971).

The voluntary intoxication instruction should have been given for two reasons, both of which are sufficient in and of themselves to justify a voluntary intoxication instruction. The evidentiary record disclosed that the defendant's wife testified that she had observed her husband drinking during the course of the evening and that he had consumed some *15 or 20 "beers."* She further testified that he was drunk. She also stated that the defendant was staggering around and his eyes were red. The defendant exercised

his constitutional right not to testify. The majority would hold that Mrs. Davis' description of her husband is insufficient as a matter of law for a jury to conclude that defendant's mental state was such that he was incapable of forming the required specific intent. Even though the evidence may have been weak and not persuasive, the jury could have reasonably inferred from Mrs. Davis' description of the defendant that he was incapable of forming the required specific intent. In all of the cases where the Kansas appellate courts have held that it was not error for a trial court to refuse to instruct on voluntary intoxication, the defendant has testified in such a manner to indicate that he or she was not intoxicated to the requisite degree. The majority seeks to use a jury-type argument to the effect that since defendant played in a band, picked up a shovel and may have run from person or persons unknown, his alleged actions negate as a matter of law any question as to his ability to form the specific intent. The evidence on which they rely is skimpy and came from witnesses who were not asked to describe defendant's condition or appearance and who did not do so. The majority rationalizes that since defendant's wife said everyone was drunk, she referred to everyone involved in the *incident* as opposed to the large crowd (several hundred) in attendance. From this, the majority seems to argue that even if defendant's wife said the witnesses were drunk, they nevertheless were able to describe the incident in detail, thus negating the possibility that the defendant himself was too drunk to form the necessary intent. It was a jury question, and I would reverse for failure of the trial judge to instruct on voluntary intoxication.

I am further unable to agree with the majority that the hospital records should have been excluded under the so-called "double hearsay" rule. In my opinion, the hospital records were clearly admissible under K.S.A. 60-460(*m*) and the majority's decision could have serious implications in personal injury litigation. The majority dismisses *People v. Herrera,* 12 Mich. App. 67, 162 N.W.2d 330 (1968), as not applicable here. I disagree. I read the case as stating very clearly that the history of the patient who was a defendant in a criminal case was admissible in evidence. The court reasoned that since the medical profession relied on history in matters no less important than those involved in lawsuits, for a court to exclude such evidence would lead to error rather than to

truth. It held it was error to refuse to admit the hospital admission forms showing the apparent physical condition of the defendant and her consumption of an unknown amount of phenobarbital. The court then went on to say that as another physician had testified to substantially the same information, it did not constitute error. Statements of a patient are the major portion of a patient's history, and *Herrera* clearly admitted that portion of the hospital records containing the history.

In the case at bar, the defendant was brought to the hospital emergency room in an ambulance some thirty minutes after the alleged stabbing took place. The hospital records show that he had a history of a prior heart condition and was complaining of severe chest pains. He had an irregular pulse, and the admitting nurse made a notation that the defendant told her he had been at a party and had gone outside to urinate and then passed out, that when he woke up he was in handcuffs and on his way to jail, and that he did not recall being involved in any fight. He subsequently gave the treating doctor a history, stating that he had blacked out after several alcoholic drinks and when he arose he had a crushing pain in his chest and was hospitalized.

The trial judge did not state why he refused to admit the evidence. There was no argument presented by the state that the defendant had made the statements in bad faith or as a self-serving declaration. The trial judge at the conclusion of the argument merely stated that the motion to introduce the evidence would be overruled. Other states having a business record exception similar to that of Kansas (K.S.A. 60-460[m]) have admitted statements made by the patients as part of the history. See *People v. Terrell,* 138 Cal. App. 2d 35, 291 P.2d 155 (1955); *State v. Finkley,* 6 Wash. App. 278, 492 P.2d 222 (1972). There is an excellent article in Powell, *Admissibility of Hospital Records into Evidence,* 21 Md. L. Rev. 22, 51-52 (1961). It details how the problem of double hearsay evidence should be dealt with and notes the various exceptions which could legitimatize the patient's statements to the hospital personnel under a business record exception. The article notes:

"Under the exception for statements of present bodily condition, the normal expressions of pain or mental suffering made by one at the time an injury is sustained or a disease becomes apparent, are admissible. This exception has also been held to have been satisfied by statements of medical history. Such a 'history,' however, must be pertinent to the existing disease or injury, or in other words, it

must be germane to diagnosis or treatment. It would appear that in regard to this form of declaration the required circumstantial probability of trustworthiness is found more in the natural instinct of man to truthfully state his physical condition so as to receive the relief he seeks, than upon spontaneity."

Kansas law would seem to be consistent with that reasoning. See *In re Estate of Bernatzki,* 204 Kan. 131, 460 P.2d 527 (1969), where, in my opinion, the medical records that were introduced contained history useful in determining the mental capacity of the testator at the time he executed a will. See also Gard, Survey of Kansas Law, 12 Kan. L. Rev. 239, 253 (1963), where Judge Gard stated:

"If the narration of past history to a physician who is called to treat or diagnose is found in hospital records which qualify under the business records exception, the history may be received as evidence as a part of the records."

Defendant's history of consumption of food, drugs and alcohol, and the stress he was under both immediately prior to and at the time of the onset of his chest pains, were an important part of the history. Given that a patient probably would want to be as truthful as possible when relating to a treating physician or nurse the details leading up to a cardiac episode, sufficient reliability would be present to warrant a hearsay exception, while the record would be clearly admissible under the business records exception.

I am unable to agree with the majority's rather summary dismissal of a number of cases cited herein as well as *State v. White,* 72 Wash. 2d 524, 433 P.2d 682 (1967). In discussing the case of *Bernatzki,* the majority states the hearsay is that of the hospital personnel, not a third party declarant. One of the records involved was a psychiatric diagnostic report signed by the clinical director. Such a report would by necessity contain not only the hearsay of numerous staff people who furnished test results and observations to the clinical director, but would also contain the patient's history as told by the patient to the various staff members. The other record admitted into evidence was a medical case summary and I assume that it also contained a vast amount of history furnished by the patient.

*State v. White,* 72 Wash. 2d 524, has been clarified somewhat by a later Washington case, *State v. Finkley,* 6 Wash. App. 278. In any event, the evidence in *White* which was excluded was a statement by a rape victim that White committed the rape and a

graphic description of the criminal act. In *Finkley,* it was held that a hospital record is admissible as a business record, subject to the trial court's excising any portion that is not admissible.

In *People v. Terrell,* 138 Cal. App. 2d 35, the medical record admitted over the defendant's objection contained the victim's history *as related by the victim's husband.* The California Court of Appeals held it was not error to admit the hospital record containing a patient's history as a "business record."

Admittedly, in many of the cases the words "double hearsay" were not used. The reason is simple. Evidence contained in a business record is not excluded simply because it is double hearsay so long as it is part of the patient's history and is pathologically germane to diagnosing and treating the medical problem involved. The hospital record supplies evidence sufficient to justify a voluntary intoxication instruction.

Having concluded that the voluntary intoxication instruction should have been given, I must also conclude that by reason of the applicability of the voluntary intoxication instruction the court had a duty to instruct on the lesser offense of battery. *State v. Seely,* 212 Kan. 195.

I would reverse the case and remand it for retrial under appropriate instructions.